UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| BOBBY RAY SNEED,<br><br>  Plaintiff,<br><br>v.<br><br>LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, ET AL,<br><br>  Defendants. | CASE NO.: 3:22-CV-00207<br><br>*Jury Trial Demanded* |

**MEMORANDUM IN OPPOSITION OF RULE 12 MOTION TO DISMISS FILED BY DEFENDANTS THE STATE OF LOUISIANA THROUGH THE DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, JAMES M. LEBLANC, TIMOTHY HOOPER, JONATHAN VINING, ERIC TURNER, JOHN BEL EDWARD, THE LOUISIANA BOARD OF PARDONS AND COMMITTEE ON PAROLE, FRANCIS ABBOT, SHERYL RANATZA, ANTHONY MARABELLA AND PEARL WISE**

MAY IT PLEASE THE COURT:

Before the Court is a Rule 12(B)(6) Motion to Dismiss Plaintiffs' Complaint filed by the defendants, the State of Louisiana through The Department of Public Safety and Corrections, James M. Leblanc, Timothy Hooper, Jonathan Vining, Eric Turner, John Bel Edwards, the Louisiana Board of Pardons and Committee on Parole, Francis Abbott, Sheryl Ranatza, Anthony Marabella and Pearl Wise. The Defendant's Motion is premature and without merit and should be dismissed as more fully discussed below.

### I. INTRODUCTION AND BACKGROUND

On or about March 29, 2022, Plaintiff Bobby Ray Sneed filed a Complaint seeking damages against the various named defendants for alleged violations of his civil rights pursuant to 42 U.S.C.

1983, violation of his civil rights under the Louisiana Constitution, and other specific causes of action set forth in said Complaint. R. Doc. 1 ¶133-196.

As the Court may recall, at the age of seventy-four (74) and after having served forty-seven (47) years in prison, on March 15, 2021, Mr. Sneed was unanimously granted parole by the Committee on Parole, a committee which is appointed by, and serves at the pleasure of the governor, under the under the umbrella of the Louisiana Department of Public Safety and Corrections. Shortly after his March 15, 2021 grant of parole, Mr. Sneed was assigned a fixed release date of March 29, 2021. Needless to say, Mr. Sneed's March 29, 2021 fixed release date came and went, and Mr. Sneed remained unlawfully detained in the Louisiana State Penitentiary at Angola and the West Feliciana Parish Detention Center for two hundred and eighty-five (285) days, where some of the named and yet to be named defendants continued to violate his civil rights until his eventual release, which then was only at the robust urging of this Court. While, for the reasons set forth herein, Plaintiff need not address the merits of his case at this juncture, a brief summary of the timeline giving rise to Mr. Sneed's claims is appropriate as supports his position that defendants' pending *Motion to Dismiss* is premature and should be denied.

Said timeline is as follows:

**March 15, 2021** – The Committee on Parole unanimously grants Mr. Sneed's parole and assigns him a fixed release date of March 29, 2021.

**March 25, 2021** – Mr. Sneed collapses as a confluence of COVID-19, pneumonia, sepsis and hypoxia, is revived and transferred to and admitted to Lane Regional Medical Center in Zachary, Louisiana until March 29, 2021. Contrary to the medical reports from the physicians at Lane Regional Medical Center, prison officials continue to insist that Bobby Sneed's collapse was as the result of an opioid overdose.

**March 29, 2021** – Instead of Mr. Sneed being released on parole in accordance with his fixed release date, Mr. Sneed is involuntarily transferred back to Angola, where he is placed into Administrative Segregation in an area within Angola known as the "Dungeon," where Mr. Sneed is over detained without the benefit of his dentures or shoes until May 5, 2021

when he finally received a hearing on the alleged March 25, 2021 his Disciplinary Board hearing.

**May 5, 2021** – The Angola Disciplinary Board exonerates Mr. Sneed of any of the alleged wrongdoing on March 25, 2021. Despite this finding, the Committee on Parole and its then Executive Director Francis Abbott, continue to unlawfully detain Mr. Sneed.

**May 10, 2021** – After further yet to be legitimately explained actions by the Committee on Parole, Mr. Sneed's March 15, 2021 grant of parole is "revoked" and Mr. Sneed is returned to the general population of Angola as if the March 15, 2021 grant of parole and the fixing of the March 29, 2021 release date had never occurred.

**May 10, 2021 – December 10, 2021** – Mr. Sneed remained unlawfully detained as his attorneys explored both state and federal court avenues to secure his release. However, just as Mr. Sneed was steps away from walking out of the gates of Angola as a free man, he was arrested by the West Feliciana Parish Sheriff's Office for an alleged drug possession dating back to early November, 2021.

**January 7, 2022** – After exhaustive legal wrangling with defendants, and the stern suggestion from the federal court, two hundred and eighty-five (285) days beyond his fixed release date, Bobby Sneed was released from the West Feliciana Parish Detention Center and placed in the hands of his attorneys to transfer him to a twenty-eight date in-patient substance abuse rehabilitation facility in Baton Rouge, Louisiana.

**January 8, 2022 – February 4, 2022** – Bobby Sneed remained at the Capital Area Recovery Program ("CARP") facility with no access to visitors. **Mr. Sneed's walk out of the CARP facility marked the end of his three hundred and thirteen (313) days of unlawful detention caused by the direct or indirect actions of the defendants.**

**February 4, 2022** – Mr. Sneed was released from CARP and took up residence in a facility in Baton Rouge managed by the Louisiana Parole Project until March, 2022 when he moved to New Orleans.

**March 29, 2022 –** Mr. Sneed filed his initial Complaint as this was the one-year anniversary of his fixed release date of March 29, 2021. Although this filing was premature as only fifty-four (54) days had lapsed since Mr. Sneed gained his unfettered freedom and could readily meet with undersigned counsel, he did not want to risk filing his Complaint past the one-year liberative prescription period applicable to tort claims.

**April 13, 2022** – The Court issued an Order setting a Scheduling Conference on June 2, 2022.

**May 13, 2022** – Undersigned counsel for Mr. Sneed, Justin Schmidt contracts COVID-19, which ultimately has a particular damaging and lingering affect on his health for the majority of the summer.

**May 19, 2022** – Pursuant to the Magistrate Bourgeois's Order, Plaintiff files his Status Report declaring his intention to amend his Complaint.

**May 19, 2022 – September 1, 2022**, Mr. Sneed's sole legal counsel, Justin Schmidt's health continues to deteriorate to the point he seeks additional physician's care on September 1, 2022.

**September 1, 2022** – Schmidt, Bobby Ray Sneeds sole legal counsel, visits Dr. S. Colby Dana, M.D. at Ochsner's Baptist Campus in New Orleans who, after interviewing and physically examining Schmidt orders a barrage of test and a complete work-up and panel on his blood. Of all of the various results from this September 1, 2022 blood work, the most critical result that must be addressed immediately is the extremely high level of sugar in his blood where Schmidt records an estimated average Glucose reading of **289 mg/dL** (standard range 68-131 mg/dl) and a Hemoglobin A1C level of **11.7%** (where the standard range is 4.0-5.6%). At these levels Schmidt physician diagnoses Schmidt with Type-II Diabetes at a level that is life-threatening if not treated immediately. A complete copy of the results of Justin Schmidt's blood work detailing this diagnosis is attached hereto as <u>Exhibit A</u>. As a result of this diagnosis, Schmidt is prescribed the medication Metformin and is scheduled for a follow-up appointment with a new primary care physician, Dr. Nicholas J. DiSalvo, M.D., who has more experience treating such extreme cases of Type-II Diabetes.

**September 16, 2022** – Schmidt is seen by Dr. Nicholas J. Disalvo, M.D. at Ochsner's Baptist Campus in New Orleans at which appointment, he is further prescribed: 1) Ozempic, a semaglutide to further combat the excessive blood glucose; 2) Lipitor, an atorvastatin to treat Schmidt's high blood pressure (146/106); and Exforge, a combination

amlodipline-valsartan for his high blood pressure. Schmidt is then scheduled with a follow-up visit with Dr. Nicholas J. Disalvo, M.D. on another appointment on November 10, 2022.

**September 16, 2022** – Defendants files their initial Motion to Dismiss under Rule 12

**October 7, 2022 –** Plaintiff Bobby Ray Sneed, through his counsel of record Justin B. Schmidt files his opposition to defendants' motion to dismiss citing Schmidt's continued compromised health.

**November 10, 2022** – Schmidt is ordered to undergo another blood draw where another glucose panel is performed and reveals average **Glucose reading of 194 mg/dL** (standard range 68-131 mg/dl) and a **Hemoglobin A1C level of 8.47%** (where the standard range is 4.0-5.6%). Although this follow-up visit shows progress in Schmidt's overall health, tto date, Schmidt has not been able to secure the prescribed Ozempic medication due to a nationwide shortage, coupled with its high cost and reluctance of insurance companies to cover it because it is also being used for weight management. A copy of this Schmidt's blood panel results is attached hereto as Exhibit B.

**December 16, 2022 –** Still not able to secure the prescribed Ozempic prescription, Schmidt again visits Dr. Nicholas J. Disalvo at Ochsner's Baptist Campus at which time as a substitute to Ozempic, Disavlo prescribes Rybelsus, a substitute semaglutide to further combat Schmidt's excessive blood glucose along with the Metformin. Because Rybelsus often takes some time to be approved by insurance companies, Dr, Disalvo further prescribes Amaryl, a glimepiride for Schmidt to take until he can secure the Rybelsus.

**December 23, 2022** – Schmidt's Rybelsus prescription is approved and he continues to take it daily along with the previously noted medications with the exception of the Amaryl, which he is instructed to discontinue.

January 9, 2023 – Defendants again reurge their previously filed Motion to Dismiss under Rule 12 and/or Rule 12 (b) (6).

**February 8, 2023** – Schmidt is scheduled to undergo another blood draw and glucose panel to again check his progress.

## II. LAW AND ARGUMENT

A.   **LEGAL STANDARD FOR A RULE 12(B)(6) MOTION TO DISMISS**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint against the legal standard set forth in Rule 8. which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

B.   **PLAINTIFFS' COMPLAINT STATES A VIABLE CLAIM AGAINST THE MOVING DEFENDANTS**

"[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678 (citing Twombly, 550 U.S. at 556). *A. Hannibal Joiner v. Department of Justice on Behalf of Director, et al. (M.D. La., 2016)* Rather, "[t]o survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim of relief that is plausible on its face.' In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully."

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Furthermore, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiffs obligation to provide the 'grounds' of his 'entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." On a motion to dismiss, the court may consider "the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" "The [C]ourt may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the

pleadings and are central to a plaintiffs claims." *Durham v. Ascension Parish Sch. Bd.* (M.D. La., 2015).

In the case at hand, not only has Mr. Sneed met the threshold for defeating the Motion to Dismiss, he has established good cause as why he should be granted leave to amend his Complaint addressing the deficiencies and defenses set for in the Motion to Dismiss now that his legal counsel has further recovered from his previously compromised health condition. Schmidt latest prescribed medication initiated on December 16, 2022 has significantly improved Schmidt's health and eliminated those affects previously hindering his ability to sufficiently practice law such as excess and prolonged fatigue, diabetic neuropathy, and blurred vision. He is now able to fully function as a zealous advocate for Mr. Sneed and continue to represent him in this matter. Additionally, so that there are no further delays in Mr. Sneed advancing his claims, Schmidt is in the process of engaging additional counsel to assist him in Mr. Sneed's representation in the even that Schmidt's health again declines in the future.

### III. CONCLUSION

Based on the foregoing, the plaintiffs' respectfully requests that this Honorable Court deny the defendants' Motion to Dismiss the Plaintiffs' Complaint under Rule 12(b)(6) or in the alternative, defer ruling on defendants' motion until such time that Mr. Sneed amends his complaint to correct any deficiencies, which said amended complaint shall be filed with the Court no later than Friday, February 10, 2023, a mere two (2) weeks from the date of this this filing.

Respectfully submitted,

**THE LAW OFFICE OF JUSTIN B. SCHMIDT**

/s/Justin B. Schmidt
**JUSTIN B. SCHMIDT, LA Bar No. 25864**
1506 Seventh Street
New Orleans, LA 70115
Mobile: (504) 451-6567
Facsimile: (504) 370-9079
Email: Justinschmidtlaw@gmail.com

***Attorney for Bobby Ray Sneed***

## CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2023, a copy of the Plaintiff's Opposition to Defendants' *Rule 12 Motion to Dismiss* was filed electronically with the Clerk of Court via the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.

/s/Justin B. Schmidt

MyChart - Test Details

Name: Justin Burton Schmidt | DOB: 12/25/1969 | MRN: 466439 | PCP: Christopher J Wormuth, MD | Legal Name: Justin Burton Schmidt

# HEMOGLOBIN A1C - Details

## Component Results

| Component | Your Value | Standard Range | Flag |
|---|---|---|---|
| **Hemoglobin A1C** | **Your Value** **11.7** % | *Standard Range* *4.0 - 5.6 %* | **Flag** H |

ADA Screening Guidelines:
5.7-6.4% Consistent with prediabetes
>or=6.5% Consistent with diabetes

High levels of fetal hemoglobin interfere with the HbA1C assay. Heterozygous hemoglobin variants (HbS, HgC, etc)do not significantly interfere with this assay.
However, presence of multiple variants may affect accuracy.

| Estimated Avg Glucose | **Your Value** **289** mg/dL | *Standard Range* *68 - 131 mg/dL* | **Flag** H |
|---|---|---|---|

## General Information

Ordered by Samuel Colby Danna, MD

Collected on 09/01/2022 9:24 AM from Blood (Blood)

Resulted on 09/01/2022 4:28 PM

Result Status: Final result

This test result has been released by an automatic process.

MyChart® licensed from Epic Systems Corporation © 1999 - 2022

EXHIBIT A

Name: Justin Burton Schmidt | DOB: 12/25/1969 | MRN: 466439 | PCP: Christopher J Wormuth, MD | Legal Name: Justin Burton Schmidt

# COMPREHENSIVE METABOLIC PANEL - Details

## Component Results

| Component | Your Value | Standard Range | Flag |
|---|---|---|---|
| **Sodium** | 135 mmol/L | 136 - 145 mmol/L | L |
| **Potassium** Specimen slightly hemolyzed | 4.3 mmol/L | 3.5 - 5.1 mmol/L | |
| **Chloride** | 104 mmol/L | 95 - 110 mmol/L | |
| **CO2** | 21 mmol/L | 23 - 29 mmol/L | L |
| **Glucose** | 362 mg/dL | 70 - 110 mg/dL | H |
| **BUN** | 13 mg/dL | 6 - 20 mg/dL | |
| **Creatinine** | 1.2 mg/dL | 0.5 - 1.4 mg/dL | |
| **Calcium** | 9.4 mg/dL | 8.7 - 10.5 mg/dL | |
| **Total Protein** | 7.7 g/dL | 6.0 - 8.4 g/dL | |
| **Albumin** | 4.2 g/dL | 3.5 - 5.2 g/dL | |

| Component | Your Value | Standard Range | Flag |
|---|---|---|---|
| **Total Bilirubin** | Your Value<br>1.0 mg/dL | Standard Range<br>0.1 - 1.0 mg/dL | |

For infants and newborns, interpretation of results should be based on gestational age, weight and in agreement with clinical observations.

Premature Infant recommended reference ranges:
Up to 24 hours.............<8.0 mg/dL
Up to 48 hours............<12.0 mg/dL
3-5 days..................<15.0 mg/dL
6-29 days.................<15.0 mg/dL

| Component | Your Value | Standard Range | Flag |
|---|---|---|---|
| **Alkaline Phosphatase** | Your Value<br>93 U/L | Standard Range<br>55 - 135 U/L | |
| **AST** | Your Value<br>65 U/L | Standard Range<br>10 - 40 U/L | Flag<br>H |
| **ALT** | Your Value<br>71 U/L | Standard Range<br>10 - 44 U/L | Flag<br>H |
| **Anion Gap** | Your Value<br>10 mmol/L | Standard Range<br>8 - 16 mmol/L | |
| **eGFR** | Your Value<br>>60 mL/min/1.73 m^2 | Standard Range<br>>60 mL/min/1.73 m^2 | |

# General Information

Ordered by Samuel Colby Danna, MD

Collected on 09/01/2022 9:24 AM from Blood (Blood)

Resulted on 09/01/2022 10:24 AM

Result Status: Final result

This test result has been released by an automatic process.

Name: Justin Burton Schmidt | DOB: 12/25/1969 | MRN: 466439 | PCP: Nicholas J Disalvo, MD | Legal Name: Justin Burton Schmidt

# HEMOGLOBIN A1C - Details

## Component Results

| Component | Your Value | Standard Range | Flag |
|---|---|---|---|
| **Hemoglobin A1C** | **Your Value** **8.4** % | *Standard Range* *4.0 - 5.6 %* | **Flag** H |

ADA Screening Guidelines:
5.7-6.4% Consistent with prediabetes
>or=6.5% Consistent with diabetes

High levels of fetal hemoglobin interfere with the HbA1C assay. Heterozygous hemoglobin variants (HbS, HgC, etc) do not significantly interfere with this assay.
However, presence of multiple variants may affect accuracy.

| Estimated Avg Glucose | **Your Value** **194** mg/dL | *Standard Range* *68 - 131 mg/dL* | **Flag** H |
|---|---|---|---|

## General Information

Ordered by Nicholas J Disalvo, MD

Collected on 11/10/2022 11:55 AM from Blood (Blood)

Resulted on 11/10/2022 8:16 PM

Result Status: Final result

This test result has been released by an automatic process.

MyChart® licensed from Epic Systems Corporation © 1999 - 2023

**EXHIBIT B**