## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**BOBBY RAY SNEED**

                                              **CIVIL ACTION**

**VERSUS**

                                           **NO. 22-207-JWD-RLB**

**LOUISIANA DEPARTMENT OF PUBLIC
SAFETY AND CORRECTIONS, ET AL.**

## <u>RULING AND ORDER</u>

**I.  INTRODUCTION**

This matter comes before the Court on the *Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)* (Doc. 77) filed by Defendants Jeff Landry, in his individual and official capacity as Attorney General of the State of Louisiana, and Christopher N. Walters and Grant L. Willis, in their individual and official capacities as Assistant Attorneys General of the State of Louisiana (collectively, "AG Defendants"). Plaintiff Bobby Ray Sneed ("Plaintiff" or "Mr. Sneed") opposes the motion. (Doc. 79.) No reply was filed. Oral argument is not necessary. The Court has carefully considered the law, the facts in the record (including those alleged in the *First Amended Complaint* ("*FAC*") (Doc. 74)), and the arguments and submissions of the parties and is prepared to rule.

As the parties acknowledge, this Court is extremely familiar with the relevant factual and procedural background of Mr. Sneed's ordeal, much of which was recounted in the Court's prior ruling in *Sneed v. Abbott*, No. 21-279, 2021 WL 3057429, at *1–9 (M.D. La. July 20, 2021) (deGravelles, J.). The full extent of those facts need not be recounted here.

In short, Mr. Sneed brought claims against the Louisiana Committee on Parole ("Committee") and its members[1] alleging that they initially granted Mr. Sneed parole, but they then conspired to deny him his freedom under extraordinarily suspicious and controversial circumstances. *See id*; *see also FAC*, Doc. 74. Mr. Sneed asserted the following specific claims in that case: (1) due process violations; (2) retaliation in violation of the First Amendment, and (3) vindictiveness. *Sneed v. Abbot*, 2021 WL 3057429, at *7–9.

As this Court previously stated:

> if true, the allegations of the *FAC* are extremely troubling. The *FAC* portrays Defendants as petty tyrants who are accountable to no one and who exercise their power without regard to the wellbeing of those within their jurisdiction. If true, Defendants' flagrant disregard of procedural norms in the two hearings at issue is, at best, irregular, and, at worst, reprehensible.

*Id.* at *1.

Nevertheless, this Court was powerless to grant Mr. Sneed any relief. As the Court stated in its *Ruling and Order* on those defendants' motion to dismiss:

> But, however terrible the Court finds Defendants' alleged conduct to be, it is bound to apply controlling precedent. That authority— *Heck v. Humphrey*, 512 U.S. 477 (1994) and its progeny—provides that, when a plaintiff makes an attack on the propriety of a single defective parole hearing (or, in this case, two hearings) and seeks an earlier release from custody, then such claims cannot be asserted until state habeas corpus remedies are exhausted.

> Having carefully considered the matter, the Court finds that Plaintiff's claims are barred by *Heck*. While the *Heck* line has an exception for attacks on general parole procedures, the allegations of the *FAC* do not fall into this category. Consequently, Defendant's motion will be granted.

---

[1] The Committee members included Executive Director Francis M. Abbot and members Tony Marabella, Sheryl Ranatza, Jim Wise, Pearl Wise, and Alvin Rouche, Jr. *Sneed*, 2021 WL 3057429, at *1. In the instant suit, Abbott, Ranatza, Marabella, and Wise were named defendants.

*Id.* at *1. Leave to amend was granted, *id.* at *19–20, but Mr. Sneed declined to do so, presumably recognizing the correctness of the Court's ruling. Judgment was entered on August 4, 2021, dismissing Plaintiff's claims without prejudice. *Sneed v. Abbott*, No. 21-279 (M.D. La. Aug. 4, 2021), Doc. 24.

Now, Mr. Sneed returns bringing new claims against these and others defendants, including the AG Defendants, Governor John Bel Edwards, and persons associated with the Department of Public Safety and Corrections ("DPSC").[2] (*FAC* ¶¶ 118–32, Doc. 74.) Mr. Sneed seeks relief under 42 U.S.C. § 1983, the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"), and Louisiana state law for the wrongs allegedly perpetrated against him. (*FAC* ¶¶ 133–199, Doc. 74.)

Following several amendments, motions to dismiss were filed—the instant one by the AG Defendants, (Doc. 77), and one by all other defendants, (Doc. 76). The latter was granted as unopposed, (Doc. 80), so the AG Defendants are, presently, the only remaining Defendants.

Attorney General Landry had virtually no involvement in Mr. Sneed's case; the federal claims against him are easily dismissed for lack of personal participation.

The case against Mr. Walters and Mr. Willis is a closer call. They are the Assistant Attorney Generals who represented the Committee in the clashes between the Committee and Sneed in state court. (*FAC*, ¶¶ 128–29, Doc. 74.) They also represented the Committee in *Sneed v. Abbott*. According to the *FAC*, they purportedly made false statements to the state trial court and then, when the trial court granted Mr. Sneed's immediate release, they delayed while appealing the trial court's order. (*Id.* ¶¶ 11, 99–100.) They ultimately proved successful, as the Louisiana Supreme Court reversed the lower courts and found that Mr. Sneed was not entitled to immediate release

---

[2] The DPSC defendants include Secretary James M. LeBlanc; Warden Timothy Hooper; and Jonathan R. Vining, DPSC's General Counsel. (*FAC* ¶ 118–121, Doc. 74.)

but rather a revocation hearing before the Board. *See Sneed v. Hooper*, 2021-01863 (La. 12/15/21), 328 So. 3d 1165, 1166 (per curiam).

The key question before the Court is whether Walters and Willis are entitled to absolute or qualified immunity for their conduct. Indeed, that is the only issue which Mr. Sneed even remotely addressed in his opposition.

In answering this question, the Court is again left in the same position it was in *Sneed v. Abbot*. That is, however much this Court may deplore the alleged conduct of Walters and Willis— conduct which purportedly included violations of their professional duty of candor and contempt of court, as outlined in the *FAC*, and behavior which this Court found to be, at best, questionable during the case of *Sneed v. Abbot*—the Court is again bound by controlling precedent.

Applying that precedent, the Court finds that the AG Defendants are entitled to qualified immunity. Mr. Sneed had the burden of pointing to controlling authority establishing that these defendants had "fair warning" that their conduct was unlawful in the unique circumstances of this case—where they delayed release (even intentionally) to appeal a district court order requiring the immediate release of a parolee while they pursued an appeal, *when they ultimately prevailed in reversing the trial court order*, and when Plaintiff makes no showing that this state supreme court ruling is invalid or otherwise unlawful. Plaintiff has failed to meet that burden. That is to say, the Court cannot say that *every* state attorney in Walters's and Willis's shoes would know, *beyond debate*, that their conduct violated clearly established law. As a result, the § 1983 claims against them will be dismissed.

Given the serious nature of this case, the Court will grant leave to amend, though the Court advises Plaintiff to be judicious and only submit a new complaint if there are good faith grounds for the claims. If Plaintiff fails to do so, the Court will enter judgment, dismissing the federal

claims with or without prejudice, as the case may be, and declining to exercise supplemental jurisdiction over Mr. Sneed's state law claims.

## II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.  Events after *Sneed v. Abbott*

#### 1. The state trial court orders immediate release (twice).

Again, the Court will not fully recount the events detailed in *Sneed v. Abbot*. Rather, the Court will pick up the narrative with the events arising *after* the conclusion of *Sneed v. Abbott*, with a special focus on the actions of the AG Defendants.

On September 29, 2021, in accordance with this Court's ruling in *Sneed v. Abbot*, Plaintiff filed a state court petition seeking a writ of habeas corpus in the 19th Judicial District Court, Parish of East Baton Rouge. (*FAC* ¶¶ 83–84, Doc. 74.) Mr. Sneed argued that he was over-detained beyond his March 29, 2021, Fixed Release Date and that the Board on Parole had acted unlawfully. (*Id.* ¶ 84.) The suit was assigned to District Judge Ronald Johnson. (*Id.*)

On November 18, 2021, the state court issued a ruling ordering Mr. Sneed immediately released under state law. (*Id.* ¶ 87.) Judge Johnson found:

> According to the record herein, Sneed, the Petitioner, appears before the Louisiana Parole Board on March 15, 2021, during which a hearing was held and the Board voted unanimously to grant Mr. Sneed's parole with a scheduled release date of March 29th, 2021. Prior to Mr. Sneed's scheduled release date, on March 25th, 2021, Mr. Sneed becomes ill and is transported off of prison grounds to a hospital for treatment. Subsequent to Mr. Sneed receiving treatment, he is returned to the grounds of Angola Prison and is held there. On March 26th, of 2021, Francis Abbott . . . the Executive Director of the Louisiana Parole Board, sends a letter to prison officials to stop Mr. Sneed's release. As a result, Mr. Sneed's scheduled release date comes and goes without him being released.

(*Id.* ¶ 88.)

But, "[l]ess than fifty-five (55) minutes before Mr. Sneed was set to leave Angola prison on November 23 . . . the Louisiana First Circuit Court of Appeal granted . . . Abbot and . . . [the] Board of Parole's emergency writ application." (*Id.* ¶ 90.) "The First Circuit accepted Respondents' argument in whole: it didn't matter if state officials violated state law or the U.S. Constitution, because Louisiana courts simply lack the power to grant relief to a prisoner in Mr. Sneed's situation." (*Id.* ¶ 91.)

Later, on December 7, 2021, the Louisiana Supreme Court "reversed . . . that terrifying opinion" (*Id.* ¶ 92.) The state supreme court "rejected" defendants' "principal legal argument that they have advanced since May 2021 and clarifie[d] the appropriate legal status of what occurred to Mr. Sneed, (*id.*):

> Factually and legally, this matter presents in a complicated and complex manner and is, therefore, dependent for resolution on its own unique circumstances. Petitioner, who was granted parole and scheduled for release on March 29, 2021, was hospitalized after collapsing on March 25, 2021. Upon his discharge from the hospital, he was not released, but returned to prison. In connection with the March 25 incident, petitioner was issued a disciplinary report for violating a conduct rule barring contraband, but following a hearing before the Louisiana State Penitentiary Disciplinary Board on May 5, 2021, petitioner was found "not guilty" of possessing contraband. Nonetheless, on May 7, 2021, a member of the Committee on Parole executed a single-member action to rescind the Committee's prior decision to grant petitioner's application for parole.
>
> "The conditions of parole as well as the granting or revocation thereof rest in the discretion of the [Committee on Parole], whose decisions generally cannot be appealed." **Bosworth v. Whitley,** 627 So. 2d 629, 631 (La. 1993) (citing La. R.S. 15:574.11). The rules adopted by the Committee on Parole provide for rescission of a prior grant of parole pursuant to a single-member action. See, La. Admin. Code Title 22, Part XI, § § 504(K), 513(A). However, here the Committee did not act to rescind petitioner's parole prior to his release date. As a result, petitioner was held in physical custody after his release date.

>   Petitioner's limited liberty interests attached once his release date
>   passed. <u>See</u>, **Morrissey v. Brewer,** 408 U.S. 471, 482 [ ] (1972).
>   For that reason, we find rescission was not available here. Rather,
>   procedural due process dictates that petitioner was entitled to a
>   revocation hearing rather than a rescission of parole. The denial of
>   that hearing is appealable. La. R.S. 15:574.11.
>
>   Accordingly, the decision of the court of appeal is reversed, and this
>   matter is remanded to the district court for further proceedings
>   consistent herewith.

*Sneed v. Hooper*, 2021-01776 (La. 12/7/21), 328 So. 3d 1164, 1164–65, *reh'g denied,* 2021-01776 (La. 12/15/21), 328 So. 3d 1167.

On December 9, 2021, "during another lengthy hearing before Judge Johnson[,] . . . Defendants announced that 'new information' had come to light and [that] they planned to apply for a rehearing before the Louisiana Supreme Court," even though, as Mr. Sneed points out, such relief is not available. (*FAC* ¶ 94 & n.6, Doc. 74 (citing, *inter alia*, La. S. Ct. Rule IX § 6 ("An application for rehearing will not be considered when the court has merely granted or denied an application for a writ of certiorari or a remedial or other supervisory writ . . . ")).

Then, on the morning of Thursday, December 9, 2021, following "a lengthy discussion regarding the procedural posture of the case, the trial court made additional factual and legal findings, and then reinstated its previous order in open court at approximately 10:00 a.m. . . . ." (*Id.* ¶ 95.)

### 2. The Louisiana First Circuit stays but then affirms the trial court, yet Mr. Sneed is not released.

Despite the trial court's order, the DPSC Defendants took no steps to facilitate his "immediate release" from Angola on December 9, 2021. (*FAC* ¶ 96, Doc. 74.) Mr. Sneed's lawyer, Mr. Frampton, emailed DPSC's General Counsel, Mr. Vining, at 10:05 a.m. that day, but neither Vining, nor Walters or Willis responded. (*Id.* ¶¶ 97–99.) Frampton tried to secure Mr. Sneed's

release, and his co-counsel, Mr. Schmidt, even drove to the gates of Angola, but Sneed was not waiting at the gates. (*Id.* ¶¶ 101–105.)

The state trial judge's staff tried to reach Vining, Walters, and Willis, but "they just ignored the judge's calls." (*Id.* at 27, ¶ 101.)[3] Frampton sent a number of emails explaining that they were all in "contempt," but Vining responded at 5:02 p.m., "Have a wonderful evening, sir! I assume your staff works 24/7 at your firm based on your comments!" (*Id.* at 27, ¶ 102.)

Sneed then alleges:

> Defendants Vining's, Walters', and Willis' conspired stalling tactics worked, as at 5:45 p.m., Defendant Walters emailed the others that he had "just received" a First Circuit Court of Appeal order temporarily staying Judge Johnson's "immediate release" order. . . . But for willful and wanton defiance of the trial court's orders, Mr. Sneed would have briefly tasted freedom for the first time in 47 years.

(*Id.* ¶¶ 103–04.)

Plaintiff then goes on to describe the "downright horrific" events of December 10, 2021. (*Id.* at 28, ¶ 105.) Around 12:23 p.m., the First Circuit Court of Appeal lifted the stay on the trial court' order, denied the Committee's writ application, and reinstated the trial court's order to immediately release Mr. Sneed to parole. (*Id.* at 28–29, ¶¶ 106–07.) Vining falsely told Frampton that Sneed was waiting to be picked up, but:

> In fact, it was just more deception. As time ticked by (and Mr. Sneed was not released), it became increasingly obvious that these Defendants, all Louisiana licensed attorneys and officers of the Court, <u>were intentionally and collectively making false statements and taking clandestine steps to again delay Mr. Sneed's court ordered release.</u>

---

[3] The *FAC* contains two sets of paragraphs 101–106. (*See FAC*, Doc. 74 at 25–28.)

(*Id.* ¶ 108.) At 2:25 p.m., "Warden Hooper personally came out to announce that he would not be releasing Mr. Sneed, but instead honoring the request from Committee on Parole member Pearl Wise." (*Id.* ¶ 109.)

Instead, Mr. Sneed was forcibly taken to West Feliciana Detention Center, where he was arrested for a "parole violation," despite the fact that this violated the state court orders, despite the fact that this violated Louisiana law requiring parole violation proceedings to be initiated by a Parole Officer and referred to the Board of Parole, and despite the fact that this contradicted the Board's position in various court documents. (*Id.* ¶¶ 110–13.) "At this point, Mr. Sneed not only remained detained, bewildered and confused in the West Feliciana Detention Center, but his grandson had recently been murdered and he had hoped to attend his funeral the upcoming Saturday, which was also his 75th birthday." (*Id.* ¶ 114.)

### 3. Unsaid in the FAC, the Louisiana Supreme Court reverses the First Circuit

The *FAC* alludes to certain court documents being filed. (*FAC* ¶ 113, Doc. 74.) Specifically, on December 13, the Committee applied for rehearing, and, on December 14, they filed an original writ application. (*Id.*)

But, the *FAC* does not mention the fact that, on December 15, 2021, the Louisiana Supreme Court issued a per curiam order granting relief to Defendants. *Sneed v. Hooper*, 2021-01863 (La. 12/15/21), 328 So. 3d 1165, 1166 (per curiam). Specifically, the Supreme Court stated:

> The district court erred in ordering Bobby Sneed released on parole. Pursuant to La. R.S. 15:574.11(C), immediate release is not an available remedy for the district court's finding that Mr. Sneed's due process rights were violated. The matter is remanded to the district court with instructions to remand the matter to the Committee on Parole to conduct a parole revocation hearing in accordance with applicable law.

*Id.*

#### 4. The allegations against Attorney General Landry are limited.

The paragraphs in the *FAC* devoted to Attorney General Landry are sparse; Mr. Sneed claims only that Landry is Walters and Willis's "superior," (*FAC* ¶ 127, Doc. 74), and that they "work[ed] under the supervision of . . . Landry and within the course and scope of their employment with . . . Landry's office" when they "repeatedly made written and oral false statements to the State District Court assuring that Court that Mr. Sneed was never assigned the Fixed Release Date"—that is, the date of March 29, 2021, in which his parole would begin. (*Id.* at ¶¶ 9–11.) These are the only allegations against Landry.

### B.  Claims and Procedural History

In the *FAC*, Mr. Sneed now asserts the following claims: (1) violations of his right to due process, against all defendants, (*FAC* ¶¶ 133–141, Doc. 74); (2) violations of his rights under the Louisiana Constitution of 1974, against all defendants (*id.* ¶¶ 142–144); (3) state law false imprisonment, against all defendants, (*id.* ¶¶ 145–48); (4) state law negligence, against all defendants, (*id.* ¶¶ 149–54); (5) failure to intervene, against all defendants, (*id.* ¶¶ 155–60); (6) a *Monell* claim and failure to train and supervise, against Warden Hooper, (*id.* ¶¶ 161–65); (7) *respondeat superior*, against Hooper, (*id.* ¶¶ 166–68); (8) indemnification, against Hooper, (*id.* ¶¶ 169–71); (9) failure to adopt policies, against Secretary LeBlanc, (*id.* ¶¶ 172–80); (10) *Monell* and failure to train/supervise, against LeBlanc, (*id.* ¶¶ 181–85); (11) failure to train, against LeBlanc, (*id.* ¶¶ 186–91); (12) false imprisonment and intentional infliction of emotional distress, against Marabella and Abbott, (*id.* ¶¶ 192–93); and (13) Civil RICO, against all defendants, (*id.* ¶¶ 194–99). Plaintiff prays for declaratory and injunctive relief as well as for damages and attorney's fees. (*Id.* ¶ 201.)

On September 16, 2021, all defendants other than the AG Defendants filed a *Rule 12 Motion to Dismiss*. (Doc. 58.) This Court issued an order denying the motion without prejudice but granting Plaintiffs leave to amend to address any deficiency in the original motion to dismiss. (Doc. 64.) The Court reserved to these defendants the right to "re-urge any argument made in [their motion] in response to an amended complaint, if appropriate." (*Id.* at 2.)

On January 6, 2023, with no amended complaint filed, these defendants filed a *Rule 41(B) Motion to Dismiss or in the alternative, Motion to Re-Urge Rule 12 Motion to Dismiss* (Doc. 65). In response, Plaintiff's counsel opposed dismissal substantively but also by detailing health problems he experienced and asking in the alternative for the Court to defer ruling until an amended complaint could be filed. (Doc. 69.)

The *FAC* was filed on February 13, 2023. (Doc. 74.) As a result, the re-urged motion to dismiss was denied without prejudice, subject to these defendant's right to raise the issues again. (Doc. 75.)

On February 27, 2023, all defendants other than the AG Defendants moved yet again for dismissal under Rule 12. (Doc. 76.) Because no opposition was filed, the Court granted that motion, though it gave Mr. Sneed an opportunity to file a late opposition and explain his reason for failing to respond. (Doc. 80.)

Additionally, on February 27, 2023, AG Defendants filed the instant motion. (Doc. 77.) The AG Defendant's thirty-one (31) page memorandum was met with an opposition which was a little over three (3) pages. (Doc. 79.)

III.    RELEVANT STANDARDS

    A.  **Rule 12(b)(1) Standard**

    In a Rule 12(b)(1) motion, a party may raise the defense of lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "Under Rule 12(b)(1), a claim is 'properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate' the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

    "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *McDaniel v. United States*, 899 F. Supp. 305, 307 (E.D. Tex. 1995)). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)). But, "[a] motion under 12(b)(1) should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Home Builders Ass'n of Miss., Inc.*, 143 F.3d at 1010; *see also Ramming*, 281 F.3d at 161 (citing *Home Builders Ass'n of Miss., Inc.* with approval).

    There are two forms of Rule 12(b)(1) challenges to subject matter jurisdiction: "facial attacks" and "factual attacks." *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). Relevant here, "[a] facial attack consists of a Rule 12(b)(1) motion unaccompanied by supporting evidence that challenges the court's jurisdiction based solely on the pleadings." *Harmouche v. Consulate General of the State of Qatar*, 313 F. Supp. 3d 815, 819 (S.D. Tex. 2018) (citing *Paterson*, 644 F.2d at 523). In considering a "facial attack," the court "is required merely to look

to the sufficiency of the allegations in the complaint because they are presumed to be true. If those jurisdictional allegations are sufficient the complaint stands." *Paterson*, 644 F.2d at 523.[4]

### B. Rule 12(b)(6) Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Hamilton v. Dall. Cnty.*, No. 21-10133, 2023 WL 5316716, at *3 (5th Cir. Aug. 18, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

"To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "In deciding whether the complaint states a valid claim for relief, we accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Id.* (citing *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). The Court does "not accept as true 'conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Id.* (quoting *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007)). "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'"

---

[4] Conversely, "[a] factual attack challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings—such as testimony and affidavits—may be considered." *Harmouche*, 313 F. Supp. 3d at 819 (citing *Paterson*, 644 F.2d at 523). The "court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981) (citation omitted). "[N]o presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* When a factual attack is made, the plaintiff, as the party seeking to invoke jurisdiction, must "submit facts through some evidentiary method and . . . prov[e] by a preponderance of the evidence that the trial court does have subject matter jurisdiction." *Paterson*, 644 F.2d at 523.

*Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (citing *Iqbal*, 556 U.S. at 679).

The Court's "task, then, is 'to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.'" *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir.2010) (citing *Iqbal*, 556 U.S. at 678)). "[A] claim is plausible if it is supported by 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct].'" *Calhoun v. City of Houston Police Dep't*, 855 F. App'x 917, 919–20 (5th Cir. 2021) (per curiam) (quoting *Twombly*, 550 U.S. at 556).

Additionally, "[i]n determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019) (citations omitted). Court documents are matters of which this Court has taken judicial notice. *See Frampton v. City of Baton Rouge/Par. of E. Baton Rouge*, No. 21-362, 2022 WL 90238, at *6 n.67 (M.D. La. Jan. 7, 2022) (deGravelles, J.) (taking judicial notice of Court document as matter of public record in ruling on motion to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6)) (citing *Fetty v. La. State Bd. of Priv. Sec. Exam'rs,* No. 18-517, 2020 WL 448231, at *8 (M.D. La. Jan. 28, 2020) (deGravelles, J.); *Duncan v. Heinrich*, 591 B.R. 652, 655 n.2 (M.D. La. 2018) (deGravelles, J.)).[5]

---

[5] The Court also notes that, "[a]lthough a 'court may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims,' . . . the court need not do so." *Brackens v. Stericycle, Inc.*, 829 F. App'x 17, 23 (5th Cir. 2020) (per curiam)

## IV.    DISCUSSION

### A.  Parties' Arguments

AG Defendants seek dismissal of all claims against them. (Doc. 77-2.) First, they argue that all official capacity claims against them for damages should be dismissed as barred by the Eleventh Amendment. (Doc. 77-2 at 8.)

Second, AG Defendants contend they are entitled to absolute immunity; they were, they say, acting in their capacity as prosecutors for the state and in their capacity as lawyers for the Committee, and the Committee is also entitled to absolute immunity. (*Id.* at 9–11.)

Third, AG Defendants maintain they are entitled to qualified immunity. (*Id.* at 11–19.) According to AG Defendants, Plaintiffs assert no constitutional violation against Willis and Walters because all they did was ignore the Court's telephone calls and file emergency writs. (*Id.* at 13–14.) They had no custody or control over Mr. Sneed, and they lacked the authority to release him. (*Id.* at 14.) AG Defendants assert:

> Importantly, the Louisiana Supreme Court made it abundantly clear that the Nineteenth Judicial District Court **did not have** the authority to order the release of the Plaintiff. Thus, the alleged actions of Defendants, Walters and Willis cannot be described as having violated any right of Plaintiff to immediate release. Likewise, their actions of successfully pursuing appellate review cannot possibly be said to have violated any right of the Plaintiff. In fact, as Louisiana licensed attorneys and as duly-appointed Assistant Attorneys General, AAGs Willis and Walters had and continue to have a legal duty to uphold their sworn oath to defend and uphold the laws of Louisiana. In sum, Plaintiff has failed to identify a clearly established right under Federal or State law to have licensed attorneys refrain from performing their legal obligation to defend their clients and uphold the law, and Plaintiff has similarly failed to show that Defendants, AAGs Willis or Walters knowingly violated any such clearly established Federal or State law.

(quoting *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014)). *See also Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (using permissive language regarding a court's ability to rely on documents incorporated into the complaint by reference)).

(*Id.*) For similar reasons, Willis and Walters maintain that they did not fail to intervene in any constitutional violation and that they did not act with deliberate indifference. (*Id.* at 15–16.)

As to Attorney General Landry, AG Defendants argue that the sole basis of Plaintiff's claims is that he was Walters and Willis' supervisor. (*Id.* at 16.) But, Section 1983 liability cannot be based on *respondeat superior*. (*Id.*) Moreover, Landry had no personal involvement in any of the alleged misconduct. (*Id.* at 16–17.) Thus, the claims against him should be dismissed.

AG Defendants then say that Plaintiff fails to satisfy the second prong of the qualified immunity analysis: showing that the right was clearly established. (*Id.* at 17.) Here, the law is clearly established that inmates have no constitutionally protected liberty interest in parole, and, in any event, the Louisiana Supreme Court later found that (a) Plaintiff had only a limited liberty interests after his release date passed, and (b) the district court could not grant the relief of immediate release. (*Id.* at 18–19.) Thus, because these orders came after the events detailed in the instant suit, "any argument that the state district court's release order clearly established Plaintiff's right to immediate release is completely unfounded[.]" (*Id.* at 19.) These defendants did not act objectively unreasonable in not releasing Plaintiff when (a) they lacked control and custody over him and (b) they served as attorneys representing the Parole Board and ultimately won at the state Supreme Court on the issue. (*Id.*)

Fourth, after addressing each of the state law claims of false imprisonment and negligence claims, (*id.* at 19–25), AG Defendants move on to the civil RICO claims, (*id.* at 25). AG Defendants contend that Plaintiff lacks standing because he has not suffered a concrete financial loss to his business or personal property; rather, plaintiff alleges only personal injuries. (*Id.* at 26–27.) AG Defendants then argue that Plaintiff fails to plead a pattern of racketing activities and the

16

threat of continuing activity. (*Id.* at 27.) Lastly, there is no nexus whatsoever to interstate commerce, as everything occurred in the state of Louisiana. (*Id.* at 27–28.)

Fifth, AG Defendants seek dismissal of the attorney's fee claims. (*Id.* at 28.) More specifically, because they are legally immune from suit, the attorney's fee claim under § 1988 must be dismissed. (*Id.*) Likewise, the claims under 42 U.S.C. § 12205, 28 C.F.R. § 35.175, and 29 U.S.C. § 794a(b) should be dismissed, as these provisions apply to the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"). (*Id.*)

In response to this lengthy memorandum, Plaintiff states that the "entirety of the AG Defendants' argument . . . centers around their claim of immunity in one form or another." (Doc. 79 at 3.) Plaintiff continues, "However, these cases do not support the AAG Defendants claim of absolute immunity because in these instances, the respective attorneys general in question were acting in their sworn capacity as prosecutors in criminal matters where they were merely carrying out prosecutorial duties." (*Id.*). Plaintiff says AG Defendants' cases are distinguishable because

> the AAGs were in no way prosecuting Bobby Sneed or carrying out some duty related to the prosecution of a criminal matter, but instead were merely serving as legal counsel for defendants the Louisiana Committee on Parole and its executive director, Francis Abbott, where they defended their clients' unconstitutional and tortious treatment of Mr. Sneed in illegally revoking his parole after he had acquired a liberty interest in the Committee's March 15, 2021 grant of parole followed by the fixing of his release date to be March 29, 2021.

(*Id.*) Thus, says Plaintiff, the Court should reject the "misplaced assertion of immunity in many different forms" and allow the case "to advance . . . through the discovery process." (*Id.* at 3–4.)

### B. Preliminary Issues

Before turning to the heart of the matter, the Court can dispose of some of the claims with ease. First, Plaintiff has failed to oppose AG Defendants' efforts to dismiss the RICO claims. The

Court could dismiss these claims as waived on that ground alone. *See Payton v. Town of Maringouin*, No. 18-563, 2021 WL 2544416, at *26 (M.D. La. June 21, 2021) (deGravelles, J.) (collecting authorities on waiver), *aff'd*, No. 21-30440, 2022 WL 3097846 (5th Cir. Aug. 3, 2022).

Even if waiver were not at issue, the Court agrees with AG Defendants that Plaintiff's RICO claim fails for lack of standing. "[T]o establish RICO standing, a plaintiff must prove a concrete financial loss, an actual loss of their own money, and not mere injury to a valuable intangible property interest." *HCB Fin. Corp. v. McPherson*, 8 F.4th 335, 344 (5th Cir. 2021) (cleaned up). That is to say, "[i]njury to mere expectancy interests or to an intangible property interest is not sufficient to confer RICO standing." *Id.* (citation omitted). Here, Mr. Sneed has made no showing that he suffered an actual loss of his own money, so his RICO claim must fall.

Second, and keeping with jurisdiction, the Court agrees with AG Defendants that they are entitled to immunity under the Eleventh Amendment for any claims for monetary damages made against them in their official capacities. As this Court has explained, "[t]he Supreme Court has held that a State is not a 'person' against whom a § 1983 claim for money damages might be asserted. . . . This rule extends to arms of the state, and to a state's officials acting in their official capacities." *Murray v. LeBlanc*, 629 F. Supp. 3d 437, 449 (M.D. La. 2022) (deGravelles, J.) (cleaned up). While the *Ex Parte Young* exception exempts from this rule claims that are "declaratory or injunctive in nature and prospective in effect," it does not affect claims against state officials for violations of state law. *Id.* at 450 (citations omitted). Thus, all official capacity claims against the AG Defendants, except the claims against them for injunctive and declaratory relief under § 1983, will be dismissed without prejudice. *See id.*

Third, Plaintiff has failed to state a viable § 1983 claim against Attorney General Landry. "Section 1983 offers no *respondeat superior* liability." *Pineda v. City of Hous.*, 291 F.3d 325, 328

(5th Cir. 2002). "A supervisory official may be held liable . . . only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (quoting *Gates v. Tex. Dep't of Prot. & Regulatory Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)). Here, as explained above, Plaintiff's allegations against Landry are minimal; he was not personally involved in the underlying events, and *FAC* says only that he was the "superior" to Walters and Willis and that they "work[ed] under [his] supervision . . . and within the course and scope of their employment with [his] office" when making certain misrepresentations to the state court. (*FAC* ¶¶ 9–11, 127.) Without more, Plaintiff's claims against Landry fail.

And fourth, Plaintiff makes no response concerning AG Defendant's attempt to dismiss the attorney's fee claims under the ADA and RA. These claims are also dismissed as waived. *See Payton*, 2021 WL 2544416, at *26.

## C. Immunity

### 1. Appliable Law

#### a. Qualified Immunity Generally

The Court now turns to the heart of this motion: qualified immunity. "The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *McLin v. Ard*, 866 F.3d 682, 688–89 (5th Cir. 2017) (quoting *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc)). To prevail, Mr. Sneed has the burden of demonstrating the defense does not apply. *Id.* at 689 (citing *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005)). "The plaintiff must show '(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at

19

the time of the challenged conduct.'" *Id.* (quoting *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir.

2013)). "Courts have discretion to decide which prong of the qualified-immunity analysis to

address first." *Id.* (quoting *Morgan*, 659 F.3d at 371).

*b.* Clearly Established Law Generally

As to the second prong, "[q]ualified immunity attaches when an official's conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would

have known." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (quoting *White v.

Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (alterations and internal quotation marks omitted)).

"Because the focus is on whether the officer had fair notice that her conduct was unlawful,

reasonableness is judged against the backdrop of the law at the time of the conduct." *Id.* (quoting

*Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)).

"Although '[the Supreme] Court's caselaw does not require a case directly on point for a

right to be clearly established, existing precedent must have placed the statutory or constitutional

question beyond debate.'" *Id.* (quoting *White*, 137 S. Ct. at 551). "In other words, immunity

protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (quoting

*White*, 137 S. Ct. at 551).

"'Of course, general statements of the law are not inherently incapable of giving fair and

clear warning to officers.'" *Id.* at 1153 (quoting *White*, 137 S. Ct. at 552). "But . . . [a]n officer

'cannot be said to have violated a clearly established right unless the right's contours were

sufficiently definite that any reasonable official in the defendant's shoes would have understood

that he was violating it.'" *Id.* (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 779–80 (2014)).

Phrased another way, "[w]hen considering a defendant's entitlement to qualified immunity,

[the Court] must ask whether the law so clearly and unambiguously prohibited his conduct that

'*every* reasonable official would understand that what he is doing violates [the law].'" *McLin*, 866 F.3d at 695 (citing *Morgan*, 659 F.3d at 371). "To answer that question in the affirmative, we must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Id*. at 696 (quoting *Morgan*, 659 F.3d at 371–72). "Where no controlling authority specifically prohibits a defendant's conduct, and when the federal circuit courts are split on the issue, the law cannot be said to be clearly established." *Id*. (quoting *Morgan*, 659 F.3d at 372).

"Ultimately, the touchstone is 'fair warning': The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'" *Crittindon v. LeBlanc*, 37 F.4th 177, 186 (5th Cir. 2022) (quoting *Shumpert v. City of Tupelo*, 905 F.3d 310, 321 (5th Cir. 2018) (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)).

### 2. Analysis

This suit involves the intersection of several legal theories. On the one hand, the Fifth Circuit "has recognized the 'clearly established right to timely release from prison.'" *Crittindon*, 37 F.4th at 188 (citing *Porter*, 659 F.3d at 445).

> Of course, "timely release" is not the same as instantaneous release: it is reasonable for jailers to have some administrative delay in processing an inmate's discharge. While courts have declined to define the amount of delay that is reasonable, it is without question that holding without legal notice a prisoner for a month beyond the expiration of his sentence constitutes a denial of due process.

*Id*. (cleaned up).

On the other hand, "Louisiana parole statutes do not give rise to a constitutionally protected liberty interest in parole release." *Stevenson v. Louisiana Bd. of Parole*, 265 F.3d 1060, 1060 (5th

Cir. 2001) (per curiam). *See also Bastida v. LeBlanc*, 372 F. App'x 443, 444 (5th Cir. 2010) ("Bastida has pointed to no state laws using language mandating release, which would give rise to a constitutionally protected 'expectation of parole.' He thus has not established that his right to parole is protected by the Due Process Clause." (internal citations omitted)). As the Louisiana Supreme Court referenced in *Sneed v. Hooper*, an inmate has an "indeterminate" liberty interest when he is granted parole which, "[b]y whatever name," is protected by the Fourteenth Amendment, and due process requires that, to revoke parole at that point, there must at least be some sort of "informal hearing." *Morrissey*, 408 U.S. at 482–84; *see also Sneed v. Hooper*, 328 So. 3d at 1165 (stating that Sneed's "*limited* liberty interests attached once his release date passed" (emphasis added) (citing *Morrissey*, 408 U.S. at 482)). But, as the Louisiana Supreme Court ultimately held, Plaintiff is not entitled to immediate release; he is only entitled to a revocation hearing. *See Sneed v. Hooper*, 328 So. 3d at 1166.

Interlarded with this parole law is AG Defendants' claim to prosecutorial immunity. As the Fifth Circuit recently said:

> Prosecutors may be shielded by absolute immunity for acting as the state's advocate in criminal cases. *See generally Imbler v. Pachtman*, 424 U.S. 409 [ ] (1976). But immunity is not automatic. *See Cousin v. Small*, 325 F.3d 627, 631 (5th Cir. 2003) (per curiam). Rather, prosecutors are absolutely immune only "for their conduct in 'initiating a prosecution and in presenting the State's case' insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.'" *Burns v. Reed*, 500 U.S. 478, 486 [ ] (1991) (citations omitted) (quoting *Imbler*, 424 U.S. at 430–31[ ]). Conversely, "a prosecutor is afforded only qualified immunity for acts performed in the course of 'administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings.'" *Loupe v. O'Bannon*, 824 F.3d 534, 539 (5th Cir. 2016) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 [ ] (1993)). In sum, prosecutors are not entitled to absolute immunity when "functioning as the equivalent of a detective rather than as an

advocate preparing for trial." *Cousin*, 325 F.3d at 632–33.

*Wooten v. Roach*, 964 F.3d 395, 407 (5th Cir. 2020). There, the state AG was involved in a criminal investigation into a judge for alleged bribery. *Id.* at 399. The Assistant AG had "appeared before the sixth grand jury and obtained a 're-indictment' of" the judge, allegedly failed to disclose exculpatory evidence, was involved in plea bargaining activities, and appeared at a hearing to oppose the judge's motion to quash. *Id.* at 411–12. The Fifth Circuit reversed the lower court's ruling that the AG was not entitled to absolute immunity. *Id.*

Plaintiff responds that *Wooten* is distinguishable. Plaintiff says that Walters and Abbot were not serving as prosecutors, so they are not entitled to any prosecutorial immunity.

Plaintiff may be right about *Wooten*, but he misses the larger point about qualified immunity. It was Mr. Sneed's burden to come forward with "controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity" establishing that "the law so clearly and unambiguously prohibited his conduct that '*every* reasonable official would understand that what he is doing violates [the law],'" *McLin*, 866 F.3d at 695. And, even though Plaintiff may have distinguished *Wooten*, he has not shown that Walters and Willis had "fair warning" that their conduct was unlawful in the unique circumstances of this case—where they delayed release (even intentionally and improperly) to appeal a district court order requiring the immediate release of a parolee while they pursued an appeal, when they *ultimately prevailed in reversing the trial court order*, and when there is no showing that the high court's decision was invalid or otherwise can or will be overturned.

Under these circumstances, the Court cannot say that every reasonable lawyer representing the Committee—who has already been ruled to have absolute immunity—would know that their conduct was unlawful. And the Court certainly cannot conclude that "existing precedent . . . placed

the statutory or constitutional question beyond debate." *Kisela*, 138 S. Ct. at 1152. As a result, the

Court must dismiss Plaintiff's § 1983 claims against Walters and Willis.

### D.  Leave to Amend

"[A] court ordinarily should not dismiss the complaint except after affording every

opportunity to the plaintiff to state a claim upon which relief might be granted." *Byrd v. Bates*, 220

F.2d 480, 482 (5th Cir. 1955). The Fifth Circuit has further stated:

> In view of the consequences of dismissal on the complaint alone,
> and the pull to decide cases on the merits rather than on the
> sufficiency of pleadings, district courts often afford plaintiffs at least
> one opportunity to cure pleading deficiencies before dismissing a
> case, unless it is clear that the defects are incurable or the plaintiffs
> advise the court that they are unwilling or unable to amend in a
> manner that will avoid dismissal.

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

One leading treatise has further explained:

> As the numerous case citations in the note below make clear,
> dismissal under Rule 12(b)(6) generally is not with prejudice—
> meaning, not immediately final or on the merits—because the
> district court normally will give the plaintiff leave to file an amended
> complaint to see if the shortcomings of the original document can
> be corrected. The federal rule policy of deciding cases on the basis
> of the substantive rights involved rather than on technicalities
> requires that the plaintiff be given every opportunity to cure a formal
> defect in the pleading. This is true even when the district judge
> doubts that the plaintiff will be able to overcome the shortcomings
> in the initial pleading. Thus, the cases make it clear that leave to
> amend the complaint should be refused if there is no basis for
> concluding that the plaintiff can state a claim and thus permitting an
> amendment would be futile. A district court's refusal to allow leave
> to amend is reviewed for abuse of discretion by the court of appeals.
> A wise judicial practice would be to allow at least one amendment
> regardless of how unpromising the initial pleading appears because
> it usually is unlikely that the district court will be able to determine
> conclusively on the face of a defective pleading whether the plaintiff
> actually can state a claim for relief. Such a practice would be in line
> with the more forgiving treatment courts typically give to initial
> attempts to amend.

24

5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2023).

Here, though Mr. Sneed previously amended his complaint (several times), he did not do so in response to a ruling by this Court assessing the sufficiency of his claims. Thus, "the Court will act in accordance with the 'wise judicial practice' and general rule and grant" Plaintiff leave to amend. *Jordan v. Gautreaux*, 593 F. Supp. 3d 330, 373 (M.D. La. 2022) (deGravelles, J.) (citing *Watkins v. Gautreaux*, 515 F. Supp. 3d 500, 519 (M.D. La. 2021) (deGravelles, J.)).

The Court makes two notes in closing. First, as detailed above, the Court has already afforded Plaintiff with a considerable number of opportunities to state viable claims, and the Court believes it would be well within its discretion to enter judgment now. But, given the seriousness of the allegations against all defendants in this case, the Court is affording Plaintiff a final opportunity to amend the *FAC*. But, second, given the wide latitude the Court has given, Plaintiff must have a good faith basis for brining any further claims. Any amendment should not be made lightly, but only after counsel for Plaintiff ensures he complies with his Rule 11 obligations.

### E.  State Law Claims

As indicated above, AG Defendants also sought dismissal of Plaintiff's state law claims against them. Plaintiff made no response to this argument, and, on that basis alone, the Court could dismiss the claims as waived. *See Payton*, 2021 WL 2544416, at *26.

However, the Court finds the more appropriate course is to deny AG Defendants' motion on this issue without prejudice. If Plaintiff fails to cure the deficiencies of the federal claims, the Court will decline to exercise supplemental jurisdiction over these state law claims, as the Court will have dismissed all claims over which it had original jurisdiction, the state law claims will substantially predominate over those federal claims, and the state law claims raise issues that appear complex under state law. *See* 28 U.S.C. § 1367(c).

V.    CONCLUSION

Accordingly,

**IT IS ORDERED** that the *Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)* (Doc. 77)

filed by Defendants Attorney General Jeff Landry and Assistant Attorneys General Christopher N.

Walters and Grant L. Willis is **GRANTED IN PART AND DENIED IN PART.** With respect to

AG Defendant's arguments that the state law claims should be dismissed, the motion is **DENIED**

**WITHOUT PREJUDICE**. In all other respects, the motion is **GRANTED**, and all federal claims

by Mr. Sneed against these Defendants are **DISMISSED WITHOUT PREJUDICE**. Plaintiff

shall be given twenty-eight (28) days in which to amend the *FAC* to cure any deficiencies. Failure

to do so will result in judgment being entered against him.

Signed in Baton Rouge, Louisiana, on <u>September 14, 2023</u>.


_____

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**